UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

JESSICA KERR and DA'VID ABELLARD,

        Plaintiffs,

v.

        Case No.: 22-CV-60929-RAR

ESURANCE INSURANCE COMPANY,

        Defendant
_____/

**ESURANCE INSURANCE COMPANY'S
MOTION TO STRIKE COUNTER-DEFENDANT'S AFFIRMATIVE DEFENSES AND
REPLY TO ESURANCE'S AFFIRMATIVE DEFENSES**

Defendant, Esurance Insurance Company ("Esurance" or "Counter-Plaintiff"), pursuant to Fed. R. Civ. P. 7(a), 8(a), 8(c) and 12(f), moves the Court to strike the affirmative defenses of Plaintiffs, Jessica Kerr ("Kerr") and Da'vid Abellard ("Abellard") (collectively, "Counter-Defendants") and to strike Counter-Defendants' reply to Esurance's affirmative defenses to Counter-Defendants' abated bad faith claim. In support thereof, Esurance states:

    **I.**    **BACKGROUND AND PROCEDURAL POSTURE**

This coverage action arises from an automobile accident and ensuing tort lawsuit filed by Counter-Defendants in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, styled *David Abellard and Jessica Kerr v. Jennifer L. Carter, Robert A. Carter, Ricardo Delavina, and Gina Delavina*, Case No. CACE-14-016842 ("underlying lawsuit"). In that underlying lawsuit, Counter-Defendants obtained a multi-million dollar final judgment against Jennifer Carter ("J. Carter") and Robert Carter ("R. Carter"), which judgment was substantially in excess of Esurance's policy limits. Before the underlying lawsuit was filed and before final judgment was entered, however, Esurance had denied coverage and defense obligations due to a

1

Named Driver Exclusion Endorsement in Esurance's policy. That exclusion barred coverage for all claims arising out of an accident involving a motor vehicle operated by J. Carter, which occurred here.

Subsequently, without any determination of coverage in their favor and without an assignment of any rights from J. Carter or R. Carter, Counter-Defendants initiated a bad faith lawsuit against Esurance for its purported wrongdoings in connection with the underlying lawsuit and the subject accident. *See* [D.E. 1-1]. Esurance removed the instant lawsuit to this Court, *see* [D.E. 1], and thereafter filed counterclaims and third-party complaint for declaratory relief against Counter-Defendants. *See* [D.E. 21]. Esurance also moved to stay or abate Counter-Defendants' bad faith claim pending adjudication of the outstanding coverage issues presented in Esurance's counterclaims. *See* [D.E. 24].

On August 2, 2022, following oral argument, the Court entered an Omnibus Order staying Counter-Defendants' bad faith claim pending adjudication of the coverage issues as to Esurance's duty to indemnify. *See* [D.E. 42]. The Court explained that "[a]s discussed on the record at the Hearing, it is well settled in Florida law that in third-party insurance cases, a court must determine coverage and liability issues before reaching the issue of bad faith." *See id.* at 1. The Court likewise ordered Esurance to file an amended answer, affirmative defenses, counterclaim, and third-party complaint, *see id.* at 2, which Esurance did on August 12, 2022. *See* [D.E. 43]. The Omnibus Order also directed Counter-Defendants to file an answer or response to Esurance's amended counterclaim within fourteen days of its filing. *See* [D.E. 42 at 2]. The Omnibus Order, however, did not authorize Counter-Defendants to file a reply to Esurance's affirmative defenses to Counter-Defendants' then-pending bad faith complaint.

1051301\311527369.v1

On August 18, 2022, Counter-Defendants filed their Answer and Affirmative Defenses to Esurance's Amended Counterclaim and Reply to Esurance's Affirmative Defenses. *See* [D.E. 44]. In their pleading, Counter-Defendants purport to assert nine (9) affirmative defenses against Esurance. As set forth below, each of these affirmative defenses is legally insufficient and should be stricken. The Omnibus Order never authorized Counter-Defendants to inject bad faith matters into the instant coverage dispute. In fact, it held the opposite. Nonetheless, Counter-Defendants' pleading disregards the Court's Omnibus Order by unabashedly raising bad faith-type affirmative defenses. Plaintiffs, similarly, were not allowed to file a reply to Esurance's affirmative defenses to Counter-Defendants' abated bad faith claim. Simply put, bad faith is not a component of this lawsuit, and Counter-Defendants cannot press forward with litigating such issues at this time.

## II. LEGAL STANDARD

Under Rule 12(f), the Court may strike from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12 (f). District courts have "broad discretion" in exercising the power to strike and will grant such motions where the defense is insufficient as a matter of law. *See Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1317 (S.D. Fla. 2005). An affirmative defense is insufficient as a matter of law where the defense is patently frivolous on its face or if it is clearly invalid as a matter of law. *Id*. at 1318 (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). Although motions to strike are disfavored, they "may be extremely valuable" because they "weed[] out legally insufficient defenses at an early stage" and "avoid the needless expenditures of time and money[.]" *Sec. & Exch. Com. v. Weil*, No. 79-440 Civ-T-H., 1980 U.S. Dist. LEXIS 12144, at *2 (M.D. Fla. Feb. 7, 1980) (citation omitted).

Further, affirmative defenses are insufficient as a matter of law if they fail to meet the general pleading requirements of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" of the asserted defense. *See Elec. Commun. Techs., LLC v. Clever Ath. Co., LLC*, 221 F. Supp. 3d 1366, 1368 (S.D. Fla. 2016) (explaining that affirmative defenses "are subject to the same pleading scrutiny imposed by Rule 8(a) and *Twombly/Iqbal*" such that "[f]ormulaic recitations filled with labels and conclusions without factual allegations are insufficient"); *Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61010-Civ, 2019 U.S. Dist. LEXIS 99428, at *15-16 (S.D. Fla. June 13, 2019*)* (acknowledging unresolved intra-circuit split as to standards for pleading affirmative defenses, but concluding that *Twombly* applies and noting that "a majority of courts" have agreed to use the more-stringent pleading requirements for affirmative defenses); *Incardone v. Royal Carribean Cruises, Ltd.*, No. 16-20924-CIV-MARTINEZ/GOODMAN, 2019 U.S. Dist. LEXIS 108778 (S.D. Fla. Jun. 28, 2019) (adopting heighted pleading standard for affirmative defenses).

Finally, affirmative defenses are insufficient if they are not in fact affirmative defenses. "By its very definition, 'an affirmative defense is established only when a defendant *admits the essential facts* of a complaint and sets up other facts in justification or avoidance.' Thus, a defense which simply points out a defect or lack of evidence in a plaintiff's case is not an affirmative defense." *Morrison*, 434 F. Supp. 2d at 1318 (internal citation omitted; emphasis in original). Affirmative defenses are also distinct from denials. *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010). *See also Dierdorf v. Advanced Motion Therapeutic Massage*, No. 19-CIV-62609-RAR, 2020 U.S. Dist. LEXIS 261280, at *1 (S.D. Fla. Apr. 20, 2020) (striking "barebones denial").

4

### III. THE PLEADINGS GOVERN AND SHAPE DISCOVERY AND THE PROHIBITION ON CLAIMS HANDLING DISCOVERY PRIOR TO MATURATION OF A BAD FAITH CLAIM

Parties may only obtain discovery regarding nonprivileged matters that are relevant to the claims or defenses as set forth in the pleadings and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). As explained more fully below, Counter-Defendants' attempt to inject issues of bad faith into this pure insurance coverage action is not only improper, but will also prejudice Esurance. For example, Florida and federal law prohibit bad faith discovery prior to the maturation of a bad faith claim. Accordingly, federal courts applying Florida law consistently deny discovery of claim file-related materials on grounds of prematurity and irrelevance when, like here, bad faith is not at issue. *See, e.g., Ranger Constr. Indus. v. Allied World Nat'l Assur. Co.*, No. 17-81226-CIV-Marra/Matthewman, 2018 U.S. Dist. LEXIS 59004 (S.D. Fla. 2018) (finding that discovery is premature where there is no ripe bad faith claim); *Commercial Long Trading Corp. v. Scottsdale Ins. Co.*, No. 12-22787-CIV, 2012 U.S. Dist. LEXIS 184885, 2012 WL 6850675 (S.D. Fla. Dec. 26, 2012); *Hauger v. John Hancock Life Ins. Co.*, (U.S.A.), No. 8:07-CV-1711-T-EAJ, 2008 U.S. Dist. LEXIS 8413, at *17-18 (M.D. Fla. Feb. 5, 2008) ("Generally, a party may obtain discovery of a claim file when bad faith is alleged. Plaintiff's complaint does not assert a bad faith claim against John Hancock. Thus, John Hancock has shown good cause not to produce the claim files or correspondence in response to Document Request No. 3.") (internal citation omitted); *Salzbach v. Hartford Ins. Co.*, No. 8:12-cv-01645-TMAP, 2013 U.S. Dist. LEXIS 192766, at *10-11 (M.D. Fla. Apr. 19, 2013) (granting in part carrier's motion for protective order and sustaining relevance objections to requests for claims file and claims-handling related matters, including company standards: "Several courts have stated that claims files and documents related to claims handling procedures are irrelevant in a breach of contract action. Plaintiffs have asserted only one claim in

5

this action, breach of contract.") (collecting cases; citations omitted); *Hiscox Ins. Co. v. Arlington Auto Sales, Inc.*, No. 3:18-cv-1206- J-34JBT, 2020 U.S. Dist. LEXIS 100137, at *4-5 (M.D. Fla. Feb. 18, 2020) (denying in part motion to compel in coverage action, noting that defendant "does not explain how the claim file is relevant and proportional regarding the issue of coverage"; "[a]lthough 'there is no all-encompassing privilege which protects claims files,' in this case Defendant is not entitled to discovery of Plaintiff's claim file. 'Discovery of an insurer's claim and litigation file is not permissible in an action to determine coverage [even] when that action is combined with a bad faith action until the insurer's obligation to provide coverage has been established.' As such, '[a] trial court departs from the essential requirements of the law in compelling disclosure of the contents of an insurer's claim file when the issue of coverage is in dispute and has not been resolved'") (citations omitted); *Royal Marco Point 1 Condo. Ass'n v. QBE Ins. Corp.*, No. 2:07-cv-16-FtM-99SPC, 2009 U.S. Dist. LEXIS 136847, at *7 (M.D. Fla. Mar. 27, 2009) (ordering production of claims file with the exception of attorney client privileged material given that "coverage issues have now been resolved," noting that "unless and until the underlying coverage is determined, and a statutory bad faith action lodged under § 624.155, Florida Statutes, the insurer's claim file is irrelevant and beyond the scope of permissible discovery").

## IV. ARGUMENT

### A. The First Affirmative Defense Is Insufficient as a Matter of Law

In the First Affirmative Defense, Counter-Defendants allege that because "Patricia Counselman did not sign the Named Driver Exclusion Endorsement," the endorsement is supposedly "invalid by its own terms," and "Plaintiffs' accident claims were therefore covered claims under the Policy that were wrongfully denied by Esurance." *See* [D.E. 44] at 6.

This defense is improper as it is a barebones denial of Esurance's allegation of a valid exclusion endorsement and a cursory legal conclusion that coverage is somehow afforded under the policy. *See Aidone v. Nationwide Auto Guard, L.L.C.*, 295 F.R.D. 658, 661 (S.D. Fla. 2013) (striking affirmative defenses that are redundant and simply denials of plaintiff's claim); *Lima v. Heng Xian, Inc.*, No. 09-61422-CIV, 2009 U.S. Dist. LEXIS 122200, 2009 WL 4906374, at *1 (S.D. Fla. Dec. 18, 2009) (noting that merely "pointing out a defect in plaintiff's prima facie case is not an affirmative defense"); *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (citing *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988)) (noting that "a defense that simply points out a defect or lack of evidence in the plaintiff's case is not an affirmative defense").

Although not directly characterized as such, this defense can be rephrased simply as Esurance fails to state a claim upon which relief can be granted because Counselman did not sign the exclusion endorsement. This, however, is not an affirmative defense. *See, e.g.*, *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007) (striking defense that plaintiffs failed to state a claim upon which relief can be granted because "[f]ailure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case"); *Birren v. Royal Caribbean Cruises, Ltd.*, 336 F.R.D. 688, 697 (S.D. Fla. 2020) ("An assertion that a pleading fails to state a claim is not a valid affirmative defense."). Likewise, to the extent the defense alleges that coverage exists (and, to be clear, absolutely no facts are pled supporting the existence of coverage under the policy), that again is a denial of Esurance's allegations, not an affirmative defense. Because this "affirmative defense" is insufficient as a matter of law, it should be stricken.

    **B.**    **The Second Affirmative Defense is Insufficient as a Matter of Law**

In the Second Affirmative Defense, Counter-Defendants allege that "[t]he Named Driver Exclusion Endorsement is a forgery or is otherwise unauthorized, inauthentic, and invalid. Plaintiffs' accident claims were therefore covered claims under the Policy that were wrongfully denied by Esurance." *See* [D.E. 44] at 6. Essentially, Counter-Defendants' affirmative defense attempts to plead fraud by forgery, though it does so in vague and conclusory fashion without any underlying factual support. *See Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019-Civ-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 185666, at *1-2 (S.D. Fla. Oct. 29, 2018) (recognizing that forgery is "the fraudulent making or alteration of a writing to the prejudice of another's rights" and noting that "[f]raud by forgery is a subject well known to lawyers and Judges for generations") (citing 4 Blackstone, *Commentaries* 247-48 (Christian ed. 1809)).

In addition to the general heightened pleading standard required for asserting affirmative defenses, Counter-Defendants' Second Affirmative Defense is also specifically subject to Rule 9(b)'s more onerous particularity standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In other words, Rule 9(b) requires offering far more than conjecture, and a pleading "must lay out 'the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent.'" *Millstein v. Holtz*, No. 21-CV-61179-RAR, 2022 U.S. Dist. LEXIS 151350, at *16 (S.D. Fla. Aug. 23, 2022) (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). The pleading needs to be "clear," at minimum, as to the "source of the alleged misrepresentations and omissions" and "when such misrepresentations and/or omissions were made," among other items. *See id.*

Here, the asserted defense does not meet these heightened pleading thresholds. It lacks factual support as to the most basic components to support a "forgery" or "fraud" defense, such as

who committed the alleged wrongdoing, when this occurred, where this act took place, why it occurred, and how the exclusion endorsement at issue is "otherwise unauthorized, inauthentic, and invalid." *See Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 208 (Fla. 3d DCA 2003) (recognizing that the elements of a fraud claim are (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance upon the representation); *see also ADA v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (recognizing that under Rule 9(b) a plaintiff must allege fraud by setting forth: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud). These deficiencies are most alarming considering that Esurance—not Plaintiffs—is the victim of the alleged fraud. Indeed, Plaintiffs remarkably seek to use an alleged wrongdoing committed against Esurance to Esurance's exclusive detriment to obtain coverage. Against this backdrop, it must be emphasized that Plaintiffs should have available to them at this juncture all information and details surrounding the alleged forgery.

  Federal Rule of Civil Procedure 9(b) demands more than platitudes and vagaries, and it requires counsel to conduct investigations upfront to support fraud-type claims. In short, Counter-Defendants cannot raise a fraud-based defense generally (again, to Esurance's sole detriment), and then seek to obtain information in discovery to sustain that defense retroactively. *See Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985), *abrogated on other grounds in Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("The particularity rule serves several purposes. Its clear intent is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.") (internal citations omitted)); *D.H.G. Props., LLC v. Ginn*

*Cos., LLC*, No. 3:09-cv-735-J-34JRK, 2010 U.S. Dist. LEXIS 140208, at *35-36 (M.D. Fla. Sept. 28, 2010) (explaining that "Rule 9(b)'s very purpose is to protect from discovery defendants facing inadequately pled fraud claims," the "'particularity requirement of Rule 9 is a nullity if [a party] gets a ticket to the discovery process without adequately pleading a claim," and parties cannot place the "discovery cart before the pleading horse").

The Second Affirmative Defense, at its core, is little more than a barebones denial of the allegations set forth in Esurance's pleading. To the extent, moreover, the defense asserts without any factual support that coverage somehow exists under the Policy in light of the alleged forgery, it does not explain how that is so or by what mechanism. Esurance is left to guess, which thwarts the very purpose of notice pleading. *See United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (explaining that pleading is designed to "provide[] a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud" such that the defendants have "fair notice of the nature of plaintiff's claim and the grounds upon which it is based") (citation omitted); *see also Dierdorf*, 2020 U.S. Dist. LEXIS 261280, at *2 (S.D. Fla. 2020) (finding an affirmative defense as legally insufficient where the affirmative defense raises the doctrine of estoppel, is conclusory in nature and lacks necessary detail). In this respect, if Plaintiffs intend to maintain that Esurance is somehow prohibited from challenging coverage (which Esurance is not), it is their obligation to raise this defense properly. *See, e.g.*, *Rubinstein*, 2019 U.S. Dist. LEXIS 99428, at *19-20 ("[T]o allege an affirmative defense of waiver or estoppel, a party must allege and provide factual support for each of their respective elements. '[W]aiver, [and] estoppel . . . are equitable defenses that must be pled with the specific elements required to establish the defense.'") (citation omitted). Accordingly, the second "affirmative defense" should be stricken at this time.

### C. The Third, Fourth, Fifth, Sixth, and Seventh Affirmative Defenses Are Insufficient as a Matter of Law

Counter-Defendants' third, fourth, fifth, sixth and seventh affirmative defenses are improper as they repackage the abated bad faith allegations and squarely invoke Esurance's claims handling even though such matters are undeniably premature and beyond the scope of the instant coverage action. *See* [D.E. 42]. By expressly attempting to re-inject bad faith matters into this case, Plaintiffs mock the Court's Omnibus Order and again seek to transform this action into a bad faith dispute. For instance, in the Third Affirmative Defense, Counter-Defendants allege that "Esurance breached its **fiduciary duties** and acted in **bad faith** and with unclean hands by failing to timely and properly investigate the authenticity and validity of the Named Driver Exclusion Endorsement after being advised of its invalidity by its named insured," *see* [D.E. 44] at 6 (emphasis added); in the Fourth Affirmative Defense, Counter-Defendants allege "Esurance breached its **fiduciary duties** and acted in **bad faith** and with unclean hands by **failing to defend** and indemnify its insureds after being informed that the Named Driver Exclusion Endorsement had not been signed by its named insured," *see id.* (emphasis added); in the Fifth Affirmative Defense, Counter-Defendants allege "Esurance breached its **fiduciary duty** by failing to timely investigate the validity of the Named Driver Exclusion Endorsement when it was advised that it has not been signed by its named insured and allowed a money judgment to be entered against its insured. It is therefore estopped from disputing the validity of said money judgment or its obligation to pay same," *see id.* at 6-7 (emphasis added); in the Sixth Affirmative Defense, Counter-Defendants allege "Esurance breached its **fiduciary duty** by failing to timely investigate the validity of the Named Driver Exclusion Endorsement when it was advised that it had not been signed by its named insured and allowed a money judgment to be entered against its insureds more than four years later. It is therefore barred by the doctrine of laches from disputing the validity of said money

11

judgment or its obligation to pay same," *see id.* at 7 (emphasis added); in the Seventh Affirmative Defense, Counter-Defendants allege "Esurance breached its **fiduciary duties** and acted in **bad faith** and with unclean hands by failing to resolve the underlying lawsuit within the underlying policy limits when it had the ability to do so." *Id.* (emphasis added).

The common unifying feature of these five (5) affirmative defenses is that they unequivocally seek a run-around of the Court's Omnibus Order holding that bad faith matters are premature, Esurance's duty to indemnify claim is not time barred, and that Esurance's counterclaim is not "subsumed by the issues raised in Plaintiffs' bad faith complaint." *See* [D.E. 42]. By boldly asserting that Esurance is now barred from disputing its obligation to pay the underlying final judgment, Plaintiffs effectively seek reconsideration and a do-over on issues adjudged unfavorably against them. *See Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724 BLOOM/MCALILEY, 2022 U.S. Dist. LEXIS 110789, at *9 (S.D. Fla. June 21, 2022) (parties are not entitled to a "second bite at the apple" and to rehash arguments and positions previously rejected).

Counter-Defendants' affirmative defenses track—almost identically—Florida law addressing the contours of an insurer's duty of good faith and the considerations to be had in a bad faith action. Under Florida law, an insurer's fiduciary duty of good faith includes, among others, a duty to investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and to settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. *See Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). The instant affirmative defenses directly implicate these matters and recast many of the allegations in Plaintiffs' bad faith complaint. *See, e.g.*, [D.E. 1-1] at ¶¶ 15,

16, 19, 20, 22, 28-32. Through no uncertain terms, Plaintiffs intend to litigate bad faith issues in this coverage action.

Importantly, in granting Esurance's Motion to Stay or in the Alternative Abate Plaintiffs' Bad Faith Action [D.E. 24], the Court ruled that "[a]s discussed on the record at the Hearing, it is well settled in Florida law that in third-party insurance cases, a court must first determine coverage and liability issues before reaching the issue of bad faith." [D.E. 42]. In view of Florida law governing insurance bad faith claims, the Court abated Counter-Defendants' bad faith action "pending adjudication of the coverage issues presented in [Esurance's] counterclaim for declaratory judgment as to its duty to indemnify." *Id*. Yet despite this ruling, Counter-Defendants evidently seek to litigate matters on their own terms. The Court need not indulge them.

Not only is the consideration of Esurance's duty of good faith and claims handling improper at this juncture, *see* [D.E. 24, 29, 42], the affirmative defenses are clearly intended to open the door to premature bad faith discovery. Esurance will be prejudiced if these defenses are not stricken. *See, e.g.*, *Dennis v. Nw. Mut. Life Ins. Co.*, No. 3:06-cv-43-J-20MCR, 2006 U.S. Dist. LEXIS 19578, at *10 (M.D. Fla. Apr. 14, 2006) ("Florida courts have held that allowing references to an insurer's alleged bad faith actions into evidence during litigation involving a coverage dispute will prejudice the insurer and could distort the jury's view of the coverage issue."); *CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, No. 6:06-cv-324-Orl-31JGG, 2006 U.S. Dist. LEXIS 75003, at *4 (M.D. Fla. Oct. 16, 2006) (recognizing that a carrier "would clearly be prejudiced by having to litigate either a bad faith claim or an unfair settlement practices claim in tandem with a coverage claim because the evidence used to prove either bad faith or unfair practices could well jaundice the jury's view of the coverage issue"); *Nat'l Union Fire Ins. Co. v. Fla. Crystals Corp.*, No. 14-CV-81134, 2016 U.S. Dist. LEXIS 195345, at *8-9 (S.D. Fla. Apr. 12, 2016) (granting

protective order because "despite Defendants' Affirmative Defenses and Counterclaim, which generally allude to bad faith and misrepresentation, this is not a bad faith action. Rather, it is a first-party insurance coverage action").

"Under Florida law, discovery of an insurer's claims and litigation file is not permissible until the insurer's obligation to provide coverage has been established." *Fla. Crystals. Corp.*, 2016 U.S. Dist. LEXIS 195345, at *13. *See also Am. Empire Surplus Lines Ins. Co. v. Warehousing Co.*, No. 13-14028-CIV-MOORE/LYNCH, 2013 U.S. Dist. LEXIS 199644, at *5 (S.D. Fla. Nov. 27, 2013) (granting protective order and explaining that in a declaratory judgment coverage action, bad faith-type discovery concerning claim handling is "premature and/or subject of attorney-client privilege and work product protection"). Simply put, this is not a bad faith action, and the issues in this case must remain firmly focused on the narrow coverage matters at hand—not on bad faith issues that are not before the Court and very well may never be.

In any event, should the Court determine that these bad faith affirmative defenses escape the Omnibus Order's broad scope, they should be stricken because they either constitute denials of Esurance's allegations or they fail to allege with factual support the requisite elements underlying unclean hands, estoppel, and laches. *See, e.g.*, *Georgetown Trading Co., LLC v. Venturi Spirits, LLC*, No. 14-62277-CIV, 2015 U.S. Dist. LEXIS 181132, at *8 (S.D. Fla. May 8, 2015) (striking unclean hands affirmative defense where defendant "failed to allege the necessary elements" such that it was "unclear how Defendants allege to have suffered personal injury with respect to Plaintiff's conduct"); *Phila. Indem. Ins. Co. v. Fla. Mem'l Univ.*, No. 17-CIV-21133, 2018 U.S. Dist. LEXIS 4549, at *8-9 (S.D. Fla. Jan. 9, 2018) (striking estoppel affirmative defense where defendant "has not pled the specific elements of estoppel or provided any factual support for its defense"); *Wyndham Vacation Ownership, Inc. v. Square One Dev. Grp., Inc.*, No. 6:20-cv-

643-RBD-EJK, 2022 U.S. Dist. LEXIS 93560, at *12 (M.D. Fla. Feb. 2, 2022) (striking estoppel affirmative defense where "Defendants' allegations do not address the elements of estoppel and do nothing to put Plaintiffs on notice of the alleged representations, any reliance by Defendants on such representations, or a detrimental change in position by Defendants as a result of reliance on the representations"); *Fine's Gallery, Ltd. Liab. Co. v. From Eur. to You, Inc.*, No. 2:11-cv-220-FtM-29SPC, 2011 U.S. Dist. LEXIS 132257, at *6 (M.D. Fla. Nov. 16, 2011) (striking laches affirmative defense because it "does not allege any facts as to any of the theories which would establish a plausible defense," including "that plaintiff delayed asserting a right or claim, the delay was not excusable, and there was undue prejudice").

### D.     The Eighth Affirmative Defense Is Insufficient as a Matter of Law

In the Eighth Affirmative Defense, Counter-Defendants allege that "[w]hoever signed the Named Driver Exclusion Endorsement was not Patricia Counselman's agent and lacked authority to sign [the] name on her behalf." *See* [D.E. 44] at 7. As with Counter-Defendants' other defenses, this is merely a barebones conclusory denial of Esurance's allegations. *See Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010); *see also Dierdorf*, 2020 U.S. Dist. LEXIS 261280, at *1 (striking "barebones denial"). Accordingly, this defense should be stricken.

### E.     The Ninth Affirmative Defense Is Insufficient as a Matter of Law

In the Ninth Affirmative Defense, Counter-Defendants allege that "[t]he amount or basis of the money judgment entered is outside the scope of this declaratory judgment action" and that Esurance "fail[s] to state a cause of action for which relief may be granted to the extent it asks the Court to declare anything other than coverage with respect to the underlying state court judgment." *See* [D.E. 44] at 7.

This supposed affirmative defense fails. First, the Court has already accepted jurisdiction and rejected Counter-Defendants' previous argument that Esurance's "requested relief is outside the proper scope of the Declaratory Judgment Act." *See* [D.E. 42] at 2 n.3. Second, Esurance's counterclaim does not seek any determination other than its duty to indemnify anyone with respect to the subject accident, the underlying lawsuit, and the underlying final judgment. *See* [D.E. 43]. And finally, even if the counterclaim sought to challenge the "amount or basis of the money judgment entered," which it does not, this would still not be an affirmative defense but rather a supposed defect in Esurance's claim. *See, e.g.*, *Boldstar Tech., LLC*, 517 F. Supp. 2d at 1292; *Birren*, 336 F.R.D. at 697. Accordingly, this "affirmative defense" should be stricken.

### F. Counter-Defendants Were Not Authorized to File a Reply to Esurance's Affirmative Defenses

On August 2, 2022, the Court entered the Omnibus Order in which it abated the then-pending bad faith complaint and directed Esurance to file an amended pleading after which Counterclaim-Defendants were to "file an answer or response to Defendant's Amended Counterclaim." *See* [D.E. 42] at 2. The Court did not authorize Counterclaim Defendants to file a reply to Esurance's then-pending affirmative defenses nor did the Court in any manner signal that continued litigation or pleadings in connection with the abated bad faith complaint was appropriate. *See* Fed. R. Civ. P. 7(a) (providing that a reply to an answer is permitted only if the court orders one); Fed. R. Civ. P. 12(a)(1)(C) (providing that a party must serve a reply to an answer only after being served with an order to reply). Likewise, Esurance expressly stated in its amended pleading that it "only amended the counterclaim and third-party complaint allegations rather than the answer and affirmative defenses portion of the pleading, yet it refile[d] the entire

document as a whole to conform to the Court's directive to ensure clarity and cleanliness of the record." *See* [D.E. 42] at 1 n.1.

Counter-Defendants, accordingly, have no right or basis to reply to Esurance's affirmative defenses. This portion of Counter-Defendants' pleading should be stricken. *See, e.g.*, *Hansen v. Wheaton Van Lines*, No. 05-80376-CIV-RYSKAMPNITUNAC, 2005 U.S. Dist. LEXIS 60754 (S.D. Fla. Aug. 24, 2005) (striking plaintiffs' reply to affirmative defenses, noting that plaintiffs' filing was not permitted under the Federal Rules of Civil Procedure and that the Federal Rules "relieve a party from the common law burden that new matters raised in affirmative defenses will be deemed admitted unless additional facts are pled that would avoid the defenses"); *Beisel v. Finan*, No. 8:17-cv-995-T-27AAS, 2017 U.S. Dist. LEXIS 180282, at *1 (M.D. Fla. Oct. 31, 2017) (striking reply and noting that "[n]o reply to an answer or affirmative defenses is permitted unless ordered by the Court").

### IV.    CONCLUSION

Accordingly, for the reasons set forth above, Esurance respectfully requests that the Court (1) grant this Motion; (2) strike each of Counter-Defendants' affirmative defenses; (3) strike Counter-Defendants' reply to Esurance's affirmative defenses; and (4) grant such other and further relief as the Court deems just and proper.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), counsel for Esurance certifies that on September 7, 2022 he conferred with counsel for Counter-Defendants in a good faith effort to resolve some or all of the issues raised herein but has been unable to resolve such issues.

Respectfully Submitted,

s/ Rory Eric Jurman
Rory Eric Jurman
Florida Bar No.: 194646
E-mail: rjurman@hinshawlaw.com
Peter J. Lewis
Florida Bar No.: 118316
E-mail: plewis@hinshawlaw.com
HINSHAW & CULBERTSON LLP
One East Broward Boulevard
Suite 1010
Ft. Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024
*Attorneys for Esurance Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2022, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system. Copies of the foregoing document will be served upon all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Rory Eric Jurman
Rory Eric Jurman
